IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BIKRAMJIT SINGH, et al.,          §
                                  §
                    Plaintiffs,   §
                                  §  Civil Action No. 3:07-CV-0378-D
VS.                               §
                                  §
CHOICE HOTELS INTERNATIONAL,      §
INC.,                             §
                                  §
                    Defendant.    §

MEMORANDUM OPINION
AND ORDER

The question presented by defendant-franchisor Choice Hotels
International, Inc.'s ("Choice Hotels'") motion to compel
arbitration and dismiss or stay litigation is whether the claims
asserted by plaintiffs-franchisees Bikramjit Singh, Kuldip Deol,
and Daljeet Kaur (collectively, "Singh")[1] are excused from binding
arbitration on the basis that the arbitration provision of the
parties' Franchise Agreement is void as unconscionable. Concluding
that they are not, the court grants the motion to compel, and it
stays this case pending completion of arbitration.

I

In February 2003 Singh entered into a Franchise Agreement with
Choice Hotels under which he became the operator of a hotel named
"Quality Inn and Suites Airport" in Amarillo, Texas. Singh alleges

---

[1]For convenience, unless the context otherwise requires, the
court will refer to plaintiffs collectively as "Singh," as if Singh
were the sole plaintiff and the only party to the Franchise
Agreement.

that in the first year of operation, the hotel earned approximately $1.29 million in gross revenue.  Revenue decreased to $969,741.98, however, in 2005.  Singh asserts that the decline in revenue was due to Choice Hotels' actions in re-listing the hotel in its "Tour Book" as a "Quality Inn & Suites," dropping the "Airport" designation.[2]  According to Singh, after registering complaints with Choice Hotels about the revenue decline, Choice Hotels inspected the hotel, gave it a failing grade, and instructed Singh to make more than $100,000 in repairs and modifications.  Singh alleges that he was unable to make the necessary repairs and modifications and, in April 2006, Choice Hotels terminated the Franchise Agreement.

Singh sues Choice Hotels, alleging claims for breach of contract and violation of § 17.46 of the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41-17.885 (Vernon 2002 & Supp. 2006).  Choice Hotels moves under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, to compel arbitration and to dismiss or stay litigation of this case, in accordance with the terms of the Franchise Agreement.[3]

---

[2]The court need not recount the facts in any greater detail for purposes of this decision.

[3]9 U.S.C. § 3:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in

Paragraph 22 of the Franchise Agreement contains a broad-type arbitration that provides, in relevant part:

> Except for our claims against you for indemnification, actions seeking to enjoin you from using our Marks in violation of this Agreement, or, at our option, actions for collection of moneys owed us under this Agreement . . . any controversy or claim arising out of or relating to this Agreement, or breach of this Agreement, including any claim that this Agreement or any part of this Agreement is invalid, illegal, or otherwise voidable or void . . . will be sent to final and binding arbitration before either the American Arbitration Association or J.A.M.S./Endispute in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . . .

D. Br. Ex. A, ¶ 22 (bold type omitted).[4]  Singh opposes the motion, contending that the arbitration agreement should not be enforced because it is unconscionable.

------

> which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

[4]The court has cited the Franchise Agreement in this manner, rather than according to the specific appendix page, because in briefing this motion, Choice Hotels did not comply with N.D. Tex. Civ. R. 7.1(i)(1).  Rule 7.1(i)(1) provides that "[a] party who relies on documentary (including an affidavit, declaration, deposition, answer to interrogatory, or admission) or non-documentary evidence to support or oppose a motion must include such evidence in an appendix."  Because Choice Hotels did not include its evidence in an appendix, the court cannot cite the evidence according to the specific appendix page.

II

Because the agreement that forms the basis of Singh's claims is a Franchise Agreement that involves commerce, questions regarding validity and enforceability of the arbitration clause are governed by the FAA.  9 U.S.C. § 2; *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 747 (5th Cir. 1996); *see, e.g., Barber v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 2002 WL 87349, at *1–*2 (N.D. Tex. Jan. 16, 2002) (Solis, J.) (applying FAA to arbitration clause contained in franchise agreement).  Section 2

> create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act. Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration, and that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  Under the FAA, a written agreement to submit to arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The Supreme Court has interpreted § 2 to mean that although "courts may not . . . invalidate arbitration agreements under state laws applicable *only* to arbitration provisions, . . . generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [the FAA]." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681,

- 4 -

686-87 (1996) (citations omitted).

Although the FAA directs that certain written arbitration clauses are valid, irrevocable, and enforceable, the question whether generally applicable contract defenses——in this case, the doctrine of unconscionability——may invalidate an arbitration clause is generally a question of state law. *Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 281 (1995) ("States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of any contract.'") (citing 9 U.S.C. § 2). As a federal court sitting in diversity, this court would normally apply Texas choice-of-law rules, *see, e.g., Thomas v. N. A. Chase Manhattan Bank*, 994 F.2d 236, 241 (5th Cir. 1993), which in this case would require that the court apply Texas law. But the court will not apply Texas law heree, because the Franchise Agreement contains a choice-of-law clause that directs that Maryland law apply, and the parties do not appear to dispute that Maryland law controls. Paragraph 20(f) states that "[t]his agreement becomes valid only when we have signed it, and it will be interpreted under the substantive laws of Maryland, not including its conflict of laws provision . . . ." D. Br. Ex. A, ¶ 20(f). The court accordingly applies Maryland law to determine unconscionability. *See, e.g., Overstreet v. Contigroup Cos.*, 462 F.3d 409, 411 (5th Cir. 2006) (holding that district

court's reliance on law of forum state in face of undisputed choice-of-law clause was error).

Considering the federal policy favoring arbitration, the court's present task is narrowly circumscribed.  The court "in passing upon a § 3 application for a stay while the parties arbitrate, . . . may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967); *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 472 (5th Cir. 2002).  In other words, if the arbitration clause is valid and enforceable, the court's inquiry ends, and any matters relating to the agreement as a whole must be resolved by the arbitrator. *See Primerica Life Ins. Co.*, 304 F.3d at 472 ("[U]nless a defense relates specifically to the arbitration agreement, it must be submitted to the arbitrator as part of the underlying dispute.").  The court will therefore address only the alleged unconscionability of the arbitration clause.  In accordance with *Prima Paint Corp.*, 388 U.S. at 404, and applicable Maryland law, the court will not consider arguments directed toward the Franchise Agreement as a whole.

III

Under Maryland law, the burden of proving that an arbitration clause is unconscionable lies with the party asserting unconscionability. *See, e.g., Doyle v. Fin. Am., LLC*, 918 A.2d 1266, 1277 (Md. App. 2007); *Walther v. Sovereign Bank*, 872 A.2d

735, 752 (Md. 2005) (both cases citing *Green Tree Fin. Corp.-Ala.
v. Randolph*, 531 U.S. 79, 91-92 (2000)).   Generally, an
unconscionable bargain or contract is one characterized by "extreme
unfairness" that is made evident by "one party's lack of meaningful
choice, and . . . contractual terms that unreasonably favor the
other party." *Walther*, 872 A.2d at 743-44 (citing Black's Law
Dictionary 1560 (8th ed. 2004) and Restatement (Second) of
Contracts § 208 cmt. b (1981)).   In describing the doctrine's
application to an arbitration clause, Maryland's highest court has
cited with approval the following excerpt from a leading treatise
on the law of contracts:

> The concept of unconscionability was meant to
> counteract two generic forms of abuses: the
> first of which relates to *procedural*
> deficiencies in the contract formation
> process, such as deception or a refusal to
> bargain over contract terms, today often
> analyzed in terms of whether the imposed-upon
> party had meaningful choice about whether and
> how to enter the transaction; and the second
> of which relates to the *substantive* contract
> terms themselves and whether those terms are
> unreasonably favorable to the more powerful
> party, such as terms that impair the integrity
> of the bargaining process or otherwise
> contravene the public interest or public
> policy; terms (usually of an adhesion or
> boilerplate nature) that attempt to alter in
> an impermissible manner fundamental duties
> otherwise imposed by the law, fine-print terms
> or provisions that seek to negate the
> reasonable expectations of the nondrafting
> party, or unreasonably and unexpectedly harsh
> terms having nothing to do with price or other
> central aspects of the transaction.

*Walther*, 872 A.2d at 744 (quoting 8 Richard A. Lord, Williston on

- 7 -

Contracts § 18:10 (4th ed. 1998)).  But "[e]ven though the doctrine of unconscionability permits the courts to exercise considerable leeway in avoiding inequitable results, that permissiveness is not without bounds." *Martin v. Farber*, 510 A.2d 608, 611 (Md. 1986). "[T]he fairness of an agreement is to be determined as of the time it was made, not on the basis of conditions occurring subsequently." *Id.* (citing *Gladding v. Langrall, Muir & Noppinger*, 401 A.2d 662, 665 (Md. 1979)).  "Courts are not possessed of unbridled discretion to undo that which the parties fairly and voluntarily assumed, even if the agreement might be deemed imprudent." *Id.*

IV

Singh does not dispute the existence of the arbitration clause or that his claims fall within its scope.  He contends, however, that the arbitration clause is so "one-sided" as to be unconscionable and therefore unenforceable.  In support of this contention, he offers a number of arguments that he contends establish substantive unconscionability.  Specifically, he posits that arbitration is to occur at defendant's headquarters, is optional for Choice Hotels but mandatory for him, precludes discovery and precludes certain claims, is cost prohibitive, and impermissibly denies him the right to a jury trial.  Considering these contentions separately as well as cumulatively, the court concludes that Singh has failed to show that the arbitration

- 8 -

provision of the Franchise Agreement is unconscionable.

A

Singh argues that because the arbitration clause provides that "[a]ny arbitration will be conducted at [Choice Hotels'] headquarters in Maryland," it is unconscionable, because Choice Hotels is thereby afforded "psychological, physical, and economic advantage." Ps. Br. 8.  The court disagrees.

"An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974).  Forum selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9 (1972).

> Unreasonableness potentially exists where (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Haynsworth v. The Corporation,* 121 F.3d 956, 963 (5th Cir. 1997) (internal quotation marks omitted) (citing *Carnival Cruise Lines,*

- 9 -

*Inc. v. Shute*, 499 U.S. 585, 595 (1991)); *M/S Bremen*, 407 U.S. at 12-13, 15, 18).   The party who seeks to avoid application of a forum selection clause "bear[s] a heavy burden of proof" justifying its avoidance.   *M/S Bremen*, 407 U.S. at 17.

Singh has not met this burden by relying on conclusory arguments that are unsupported by any citations to authority and that border on the frivolous.[5]   The mere fact that the contractually-agreed situs of arbitration may require Singh to "endure the inconvenience and expense of lodging and board" and ultimately favor the defendant in "psychological, physical, and economic" ways that are largely unspecified in Singh's briefing is insufficient to establish that the arbitral forum selection clause is unreasonable under the circumstances or characterized by "extreme unfairness." *Walther*, 872 A.2d at 743-44.

The court therefore declines to accept Singh's argument that the arbitration clause is unconscionable on the ground that it requires that arbitration occur at Choice Hotels' Maryland headquarters.

B

Nor is the court persuaded that the arbitration clause is unconscionable based on lack of mutuality.   Singh argues that the

_____

[5]Singh cites, *inter alia*, fear of corporate eavesdropping and monitoring, and the "sheer physical drain" of traveling to Maryland, living out of a hotel, and eating in restaurants.   Ps. Br. 8.

arbitration clause is effectively optional for Choice Hotels but mandatory for him.  He fails, however, to identify the legal basis for this argument or to offer any authority to support it.  Based on the court's independent analysis of Maryland law, it rejects Singh's argument because he has failed to show that the alleged "one-sidedness" of the clause or purported lack of mutuality supports a finding of unenforceability.

Under Maryland law, an arbitration clause is not considered invalid as a matter of law when one party is allowed to litigate certain specific claims instead of having to submit them to arbitration.  *See Walther*, 872 A.2d at 748 ("We do not find that exceptions to the arbitration agreement, which allow [one party] to litigate certain specific claims instead of having to submit them to arbitration, are so unfairly oppressive as to make the agreement unconscionable.").  At the same time, however, under Maryland law

> mutual promises to arbitrate act as an independently enforceable contract.  In an enforceable arbitration agreement . . . each party has promised to arbitrate disputes arising from an underlying contract, and each promise provides consideration for the other.  Thus, in a motion to compel arbitration, a court must determine whether there is a mutual exchange of promises to arbitrate, and once a court determines that the making of the agreement to arbitrate is not in dispute, its inquiry ceases, as the agreement to arbitrate has been established as a valid and enforceable contract.

*Cheek v. United Healthcare of Mid-Atl., Inc.*, 835 A.2d 656, 665 (Md. 2003) (internal quotation marks omitted) (finding arbitration

clause to be unenforceable illusory promise where one party was bound to arbitrate all disputes and other party retained right to modify, alter, amend, or revoke arbitration at any time and at its sole discretion). But "[m]utuality . . . does not require an exactly even exchange of identical rights and obligations between the two contracting parties before a contract will be deemed valid." *Walther*, 872 A.2d at 748 (citing *Harford County v. Town of Bel Air*, 704 A.2d 421, 431 (Md. 1998) (stating that "'[i]t is well settled that the Courts of Law . . . will not inquire into the adequacy of the value exacted for the promise so long as it has some value.'") (quoting *Blumenthal v. Heron*, 274 A.2d 636, 640 (Md. 1971))).

Singh correctly posits that, under the Franchise Agreement, Choice Hotels is free to litigate any claim for indemnification, unauthorized use of its marks, or money owed under the Franchise Agreement. He also correctly points out that he is precluded from seeking a declaration from any court that Choice Hotels' declaration of default and subsequent termination of the Franchise Agreement was wrongful or that Choice Hotels' claim for monetary damages was pretextual. Singh also notes that he would not even be entitled to file a counterclaim in a suit brought by Choice Hotels against him.

But Singh fails to point out that Choice Hotels is bound in broad terms to submit to arbitration any other controversy or claim

arising out of or relating to the Franchise Agreement.  Thus the arbitration clause does not fall within the rule explained in *Cheek*, 835 A.2d at 665, and is not invalid simply because it excepts from mandatory arbitration certain specific claims that Choice Hotels might desire to bring, while requiring Singh to arbitrate all claims.[6]  *See id*.  The mere fact that the bargain the parties struck may be somewhat unequal is not grounds for invalidating it, *see, e.g., Harford County*, 704 A.2d at 431; *Straus v. Madden*, 150 A.2d 230, 235 (Md. 1959), and Singh has failed to show that the consideration paid was so grossly inadequate that, taken in conjunction with other facts, the clause should be deemed unconscionable, *see id*.

C

Nor can the court agree with Singh's assertions that the arbitration clause precludes discovery or forecloses pursuit of certain claims.  The arbitration clause provides, in relevant part, that

> except to the extent that the Commercial Rules of the American Arbitration Association may be interpreted to require you or us to produce documents, witnesses, or information at a time other than at a hearing on the claim without our mutual consent.

---

[6]The arbitration clause excepts claims brought by Choice Hotels against a franchisee "for indemnification, actions seeking to enjoin [a franchisee] from using the Marks in violation of this Agreement, or, at [Choice Hotels'] option, actions for collection of moneys owed [to it] under this Agreement."  D. Ex. A ¶ 22 (bold type omitted).

D. Ex. A ¶ 22 (bold type omitted).  Singh contends that this provision ensures "trial by ambush," in direct contravention of the general federal policy of ensuring litigants a "just, speedy, and inexpensive determination of every action" as expressed in Fed. R. Civ. P. 1.  He maintains that this one-sided discovery restriction renders the arbitration clause unconscionable.  Once again, the court must disagree.[7]

Singh's assertion that the arbitration clause precludes discovery overstates the meaning of the clause and is incorrect. The plain terms of the clause only preclude production of documents, witness, or information at a time *other than at a hearing* and without the parties' *mutual consent*.  While the court agrees that Singh would not be automatically entitled to discovery in an arbitration proceeding, the clause does not render discovery to be completely unavailable; the parties are given "mutual consent" to decide what each party is required to produce.  In

---

[7]To the extent Singh relies on an unfavorable comparison of the arbitration procedure with Rule 1, that reliance is misplaced at a general level.  "Arbitration proceedings are not constrained by formal rules of procedure or evidence."  *Mantle v. Upper Deck Co.*, 956 F. Supp. 719, 730 (N.D. Tex. 1997) (Fitzwater, J.) (citing *Robbins v. Day*, 954 F.2d 679, 685 (11th Cir. 1992)).  "By agreeing to arbitration, a party trades the procedures and opportunities for review of the courtroom for the simplicity, informality, and expedition of arbitration."  *Id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628 (1985)). "Arbitrators should be expected to act affirmatively to simplify and expedite the proceedings before them."  *Id.* (citing *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.,* 915 F.2d 1017, 1022 (5th Cir. 1990)).  In other words, generally, arbitration is considered less formal and more expeditious than is litigation.

other words, the provision is not, as Singh suggests, unconscionably "one-sided." Rather, according to its plain terms, it is bilateral in nature. Neither Singh nor Choice Hotels is required to produce documents, witnesses, or information at a time other than at a hearing and without the parties' mutual consent.

Singh also contends that the arbitration clause is unconscionable because it contains a provision stating that

> [t]he arbitrator will apply the substantive laws of Maryland, without reference to its conflict of laws provision, *except that nothing herein shall be construed to establish independently [the franchisee's] right to pursue claims under Maryland's Franchise Registration and Disclosure Law*.

Ds. Ex. A ¶ 22 (bold type omitted; emphasis added). Singh argues that this provision is unconscionable because it precludes him from pursuing a claim under the Maryland Franchise Registration and Disclosure Law "from the outset." Ps. Br. 12. The court rejects this contention.

As an initial matter, the plain meaning of this clause, which this court is obligated to enforce, *see, e.g., Dennis v. Fire & Police Employees' Retirement System*, 890 A.2d 737, 747 (Md. 2006), does not support Singh's position. The clause merely states that "nothing herein shall be construed to *establish independently* [his] right to pursue claims under Maryland's Franchise Registration and Disclosure Law." Ds. Ex. A, ¶ 22 (bold type omitted; emphasis added). In other words, the objective meaning of the proviso is

- 15 -

that nothing in the arbitration clause or the Franchise Agreement as a whole is to be construed to establish a right to pursue claims under Maryland's Franchise Registration and Disclosure Law that does not otherwise exist.  The clause therefore does not expressly preclude Singh from asserting such a claim in arbitration.

Moreover, even accepting Singh's interpretation of the clause, his argument is not adequately supported by citation to authority. In his one-paragraph argument, he cites no case or statute (or any other source of law) for the proposition that the preclusion of a substantive claim under Maryland law somehow renders an agreement to arbitrate unconscionable.  Given that the clause in this case is found in a franchise agreement that purports to foreclose a franchisee from pursuing claims under Maryland's Franchise Registration and Disclosure Law, it would seem to be a somewhat facile task for Singh to locate such authority, if it existed.

D

The court also rejects Singh's argument that the arbitration agreement is unconscionable because the potential cost of arbitration was not disclosed to him and, in any event, is cost-prohibitive.

Singh maintains that the standard fees imposed by the American Arbitration Association ("AAA"), arbitrator's fees, and travel-related expenses are cost-prohibitive.  He argues that the total cost of arbitration could exceed $30,000, exclusive of attorney's

fees; this significant cost effectively bars him from obtaining a remedy; and the arbitration clause is therefore unconscionable. The arbitration agreement does not provide a fee schedule, and instead states only that arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the AAA or J.A.M.S./Endispute.   Ds. Br. Ex. A, ¶ 22 (bold type omitted). Choice Hotels does not appear to dispute Singh's approximation of the potential costs associated with arbitration under the Franchise Agreement.   Instead, it argues that Singh has failed to show that the cost of arbitration is prohibitively high relative to the anticipated expenses of litigation.

Under Maryland law, the party asserting unconscionability based on the prohibitive expense of arbitration has the "burden of showing the likelihood of incurring such costs." *Walther*, 872 A.2d at 752 (citing *Green Tree Fin. Corp.-Ala.*, 531 U.S. at 92). Moreover,

> [t]he cost of arbitration . . . cannot be measured in a vacuum or premised upon a claimant's abstract contention that arbitration costs are too high.   Rather, an appropriate case-by-case inquiry must focus upon a claimant's expected or actual arbitration costs and his ability to pay those costs, measured against a baseline of the claimant's expected costs for litigation and his ability to pay those costs.   Another factor to consider in the cost-differential analysis is whether the arbitration agreement provides for fee-shifting, including the ability to shift forum fees based upon the inability to pay.   We note that parties to litigation in court often face costs that are

> not typically found in arbitration, such as
> the cost of longer proceedings and more
> complicated appeals on the merits.

*Id.* at 752 (quoting *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 556 n.5 (4th Cir. 2001)).  "The mere risk, however, that the plaintiffs will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement."  *Id.* (quoting *Green Tree Fin. Corp.-Ala.*, 531 U.S. at 90-91).

In this case, although Singh has adduced some minimally probative evidence of fees associated with arbitration, he has failed to show that the anticipated arbitration fees are excessive when compared with potential litigation costs.  Singh essentially relies entirely on the affidavit of his counsel, which contains little more than unsupported speculation regarding the potential fees and costs associated with arbitration.  Singh's briefing and supporting affidavit contain no real cost-differential analysis, in accordance with *Walther*, 872 A.2d at 752, that would permit the court to hold the arbitration clause unconscionable.

Moreover, the fact that the Franchise Agreement does not disclose the potential costs of arbitration does not of itself establish that the arbitration agreement is unconscionable.  *See id.* at 753 ("Because the fees arising from the arbitration cannot be predicted in detail and petitioners have not shown them to be unduly burdensome, we cannot find the arbitration agreement's

- 18 -

absence of a cost schedule or cost allocation to be unconscionable."); *Green Tree Fin. Corp.-Ala.*, 531 U.S. at 90 ("The record reveals only the arbitration agreement's silence on the subject, and that fact alone is plainly insufficient to render it unenforceable.").

Singh has therefore failed to satisfy his burden under *Walther*, 872 A.2d at 751-52, and *Green Tree Financial Corp.- Alabama*, 531 U.S. at 90-91, of establishing that the arbitration clause is invalid on the grounds that the Franchise Agreement failed to disclose arbitration costs or that arbitration is cost- prohibitive.

E

The court concludes that Singh's assertion that the arbitration clause is unconscionable because it denies him the right to trial by jury is also misplaced.

Singh relies on the Seventh Amendment to the Constitution of the United States and Article 23 of the Maryland Declaration of Rights.[8]  Singh maintains that the invocation of the arbitration clause effects an impermissible waiver of the right to a jury trial guaranteed under the Constitutions of the United States and of the State of Maryland.  The crux of his argument appears to be that the

---

[8]Article 23 provides, in relevant part, that "[t]he right of trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State . . . shall be inviolably preserved." Md. Const., Decl. of Rights, Art. 23.

arbitration clause did not expressly advise him in writing that he was waiving his right to a jury trial.[9]  Because neither federal nor Maryland law required that the arbitration clause provide this notice to Singh, the court rejects his argument.

The question whether the Seventh Amendment right to a jury trial has been waived is governed by federal law.  *Russell-Stanley Holdings, Inc. v. Buonanno*, 327 F.Supp.2d 252, 257 (S.D.N.Y. 2002).  Whether the right to a jury conferred by Article 23 has been waived is a question of Maryland law.  Under Maryland law, although the right to a jury trial is "fundamental," parties can contractually waive that right.  For there to be a valid waiver of a fundamental right such as the right to a jury trial, however, there ordinarily must exist a knowing and intelligent waiver of the right.  *Walther*, 872 A.2d at 753-54.

"Because the right to a jury trial attaches in the context of judicial proceedings after it is determined that litigation should proceed before a court . . . the loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate."  *Walther*, 872 A.2d at 754 (internal quotation marks omitted) (quoting *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 307 (4th Cir. 2001)).  "An arbitration clause by its most basic nature waives a party's right to have disputes resolved in

---

[9]Singh has adduced evidence that he had no idea he was waiving the right to jury trial by signing the Franchise Agreement.  Ps. App. 4.

- 20 -

litigation and creates the right to have them resolved by arbitration." *Id.* The loss of the right to a jury trial is therefore generally implicit in an agreement to arbitrate. *Id.* An agreement to arbitrate constitutes an election to use an alternative dispute resolution mechanism that the law not only recognizes but encourages. If Singh's position were correct, "the whole foundation of the Federal and uniform arbitration acts could be placed in jeopardy." *Id.* Thus, applying Maryland law, the court is unable to conclude that an otherwise-valid arbitration clause contained in a franchise agreement effects an unconscionable waiver of Singh's right to a jury trial protected by Article 23 of the Maryland Declaration of Rights. The court recognizes that in *Walther* the waiver of a jury trial was also made explicit by the very language of the arbitration clause, which was conspicuously presented in the agreement at issue in that case. *See Walther*, 872 A.2d at 754 n.10. The court is not persuaded, however, that this distinction should affect its analysis here, and Singh offers no basis for holding that it should. As noted, under Maryland law, "[a]n arbitration clause by its most basic nature waives a party's right to have disputes resolved in litigation and creates the right to have them resolved by arbitration." *Id*. at 755.

The same result obtains under federal law, and for substantially the same reasons. There is a strong federal policy in favor of arbitration. An otherwise-valid arbitration agreement

"waives the Seventh Amendment jury trial right." *Rogers v. KBR Tech. Servs., Inc.*, 2006 WL 2022905, at *4 (S.D. Tex. July 17, 2006) (citing *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 711 (5th Cir. 2002)).   "The Seventh Amendment right to a trial by jury is limited by a valid arbitration provision that waives the right to resolve a dispute through litigation in a judicial forum." *Am. Heritage Life Ins. Co.*, 294 F.3d at 711.   The Seventh Amendment "does not confer the right to a trial, but only the right to have a jury hear the case once it is determined that the litigation should proceed before a court." *Id.* (quoting *Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 957 F. Supp. 1460, 1471 (N.D. Ill. 1997)).   "If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes." *Id.*   As noted, if Singh's position were correct, "the whole foundation of the Federal and uniform arbitration acts could be placed in jeopardy." *Id.*

In this case, the arbitration clause necessarily precludes Singh from resolving the dispute through litigation in a judicial forum.   The clause clearly and unambiguously provides that, with certain inapplicable exceptions, "any controversy or claim arising out of or relating to this Agreement . . . will be sent to final and binding arbitration." D. Br. Ex. A, ¶ 22 (bold type omitted). The absence of express language in the clause waiving the right to jury trial does not support a different result. *See Am. Heritage*

*Life Ins. Co.*, 294 F.3d at 711 (holding that parties waived right to judicial forum and thus waived corollary Seventh Amendment right to jury trial).   The court therefore rejects Singh's contention that the arbitration clause is unconscionable on the ground that it effects an impermissible waiver of his Seventh Amendment right to a jury trial.

V

Singh's final argument is that the Franchise Agreement as a whole is a contract of adhesion.[10]  He supports this contention by attempting to show the disparity in bargaining power between the group of plaintiffs and Choice Hotels.

Assuming *arguendo* that this argument is properly addressed by the court rather than by the arbitrators, the court rejects it. Under Maryland law, a contract of adhesion is one that is "drafted unilaterally by the dominant party and then presented on a take-it-or-leave-it basis to the weaker party who has no real opportunity to bargain about its terms."  *Meyer v. State Farm Fire & Cas. Co.*, 582 A.2d 275, 278 (Md. App. 1990) (internal quotation marks omitted) (quoting Restatement (Second) of Conflict of Laws § 187, comment b.)).

---

[10]Singh's contract-of-adhesion argument is directed solely at the Franchise Agreement as a whole, and is not directed specifically to the arbitration clause.   His contention is only supported by factual allegations tending to show that Choice Hotels is a large, multinational corporation, and that he and the other plaintiffs are a small group of individuals who desired to operate a single hotel in Amarillo, Texas.

> A contract of adhesion is not automatically
> deemed per se unconscionable.  The fact that a
> contract is one of adhesion does not mean that
> either it or any of its terms are invalid or
> unenforceable.  A court will, to be sure, look
> at the contract and its terms with some
> special care.  As in most cases, it will
> refuse to enforce terms that it finds
> unconscionable and will construe ambiguities
> against the draftsman; but it will not simply
> excise or ignore terms merely because, in the
> given case, they may operate to the perceived
> detriment of the weaker party.

*Walther*, 782 A.2d at 746 (internal citations and quotation marks omitted).  A sophisticated party to a commercial contract who is asserting adhesion must demonstrate that he had no viable alternatives, or that he faced the possibility of being excluded from the hotel franchise business if he had refused.  *See Choice Hotels Int'l, Inc. v. Chewl's Hospitality, Inc.*, 91 Fed. Appx. 810, 815 (4th Cir. 2003) (unpublished opinion).  Moreover, a disparity in bargaining power alone does not necessarily render an arbitration clause unconscionable.  Although Singh avers that Choice Hotels prepared the Franchise Agreement and allowed no changes to it, he has not shown that he had no viable alternatives, or that he faced the possibility of being excluded from the hotel franchise business if he had refused.  Singh has therefore failed to show that the franchise agreement is a contract of adhesion, or that it is invalid.

VI

Singh entered into a Franchise Agreement with Choice Hotels and is responsible for understanding its contents. "[T]he law presumes that a person knows the contents of a document that he executes and understands at least the literal meaning of its terms." *Merit Music Serv., Inc. v. Sonneborn*, 225 A.2d 470, 474 (Md. 1967); *see also Vincent v. Palmer*, 19 A.2d 183, 189 (Md. 1941) (stating that, "as a general rule, when one signs a release or other instrument, he is presumed in law to have read and understood its contents, and he will not be protected against an unwise agreement"); *Owens v. Graetzel*, 132 A. 265, 268 (Md. 1926) (stating that parties to mortgage are bound by its terms and "must be held to know its meaning as thereby expressed"). Section 22 of the Franchise Agreement is entitled "Arbitration," is set out in bold type, and clearly directs that certain disputes, including this one, are to be resolved by binding arbitration. For the reasons given, the court holds that Singh has not met his burden of proving that the arbitration agreement is unconscionable.

\*      \*      \*

Choice Hotels' May 2, 2007 motion to compel arbitration and dismiss or stay litigation is granted, and the parties are ordered to participate in binding arbitration in Maryland, in accordance with the terms of ¶ 22 of the Franchise Agreement. This case is stayed pending completion of arbitration. The clerk of court is

directed to close this case statistically.  After the arbitration is concluded, a party move may the court to reopen the case statistically for further proceedings provided for under the FAA.

**SO ORDERED.**

July 11, 2007.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE